**HORACE HEIDT FOUNDATION**

v.

**UNITED STATES.**

No. 361-52.

United States Court of Claims.
March 4, 1959.

Robert V. Smith, Washington, D. C., for the plaintiff. Smith, Ristig & Smith, Washington, D. C., were on the brief.

June A. Murray, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for the defendant. James P. Garland and David A. Wilson, Jr., Washington, D. C., were on the brief.

JONES, Chief Judge.

The plaintiff sues for a refund of income taxes from September 6, 1949, through May 31, 1950, together with interest. It is the plaintiff's position that during that period it was entitled to exemption from taxes under the provisions of section 101(6) of the Internal Revenue Code of 1939, as amended (26 U.S.C. (1952 ed.) § 101), as a corporation operated exclusively for charitable and educational purposes.[1]

Horace Heidt is a well-known entertainer who has been engaged in show business for some 34 years. The greater part of his popular career has been spent as the director and master of ceremonies of an amateur-hour-type radio broadcast called the "Youth Opportunity Program." Mr. Heidt had always evidenced a desire to help young artists. His radio program was devised to provide an opportunity for them to appear in a public performance and through competition among themselves to develop their particular talent.

In order to accommodate young people of this type and also to assure as far as possible that the quality of their performance would be acceptable to large audiences, Mr. Heidt employed talent scouts to travel in advance of his show and give auditions to such aspirants preliminary to a final hearing and selection by him. The sponsor for the Youth Opportunity Program was Philip Morris & Company, Inc. (hereinafter referred to as "Philip Morris").

During the year 1947, Horace Heidt's advance agents promoted public interest in both the Youth Opportunity Program and its sponsor's product by arranging for the display of suitably designed placards in the towns and cities which they visited, thus giving publicity both to Mr. Heidt's program and to its sponsor's product. That activity became known as the merchandising or advance publicity phase of the Heidt operations. It was carried on by the General Publicity Service, Inc. (hereinafter referred to as "General Publicity"), a corporation organized in 1948, all of whose stock was owned by Mr. Heidt. Under the Philip Morris contract for promotional and publicity work for the Youth Opportunity Program, General Publicity received $2,500 a week. Another source of income for General Publicity was the revenue from the sale of souvenir programs for the show.

During the presentation of the Youth Opportunity Program, Mr. Heidt became convinced that there was a need for some kind of organization to which talented young people who aspired to become professional entertainers could look for assistance and protection while they prepared for advancement in that field. In his work with the Youth Opportunity Program, he found many young people whom he considered as having exceptional talent but who lacked sufficient funds for special training to assist them in getting started in that work. In addition, Mr. Heidt realized the unsatisfactory environment in which young people often lived while they were trying to break into the entertainment field. With this attitude Mr. Heidt established the

1. "§ 101. Exemptions from tax on corporations.

" * * * the following organizations shall be exempt from taxation under this chapter—

* * * * *

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation * * *"

Horace Heidt Foundation in 1949 under the laws of the State of California.[2]

The bylaws of the Horace Heidt Foundation provided that its corporate powers should be vested in a board of three directors and that the three organizers should constitute the first board of directors. While the first board of directors consisted of Horace Heidt's attorney, A. L. Abrahams, the latter's secretary, and another woman from the latter's office, shortly after the organization of the Foundation, Mr. Heidt became its president and he has at all times had general charge of all affairs of the Foundation.

In order to supply the Foundation with a source of income to carry out its projects, Mr. Heidt in 1949 sold all of his stock in General Publicity Service (100 shares constituting all of the capital stock) to the Foundation for $500,000. The $500,000 was payable as follows: $25,000 in cash and the balance at the rate of $5,000 monthly without interest until paid. The price of $500,000 which the Foundation agreed to pay Horace Heidt for the entire capital stock of General Publicity was determined by taking five times what he considered the potential annual net earnings of the Foundation. No payments on the stock purchase price were made after May 31, 1952, and the balance owing Mr. Heidt for his stock is $360,000.

Immediately upon the sale of the stock, General Publicity was dissolved and the Foundation acquired net liquid assets in excess of $75,000. Thus, the Horace Heidt Foundation took over the business activities of merchandising and the sale of souvenir programs.

While the contract of sponsorship with the Philip Morris Company had only approximately two years to run when the Horace Heidt Foundation was or-

ganized, Mr. Heidt was optimistic as to his ability to secure a renewal of the contract, or, in the alternative, a comparable contract with a new sponsor. However, the Philip Morris contract was not renewed in 1951 and no new sponsors were obtained for 1952, but sponsors were obtained for 1953 and subsequent years.

Mr. Heidt did not arrange for the Foundation to carry on any of the merchandising or advance publicity of the new sponsors. Relatively small amounts of income from work of that character or from the sale of programs were received by the plaintiff after 1951, because of the denial in 1950 of the plaintiff's application for exemption from income tax under section 101(6) of the Internal Revenue Code.

From its inception the Horace Heidt Foundation was of great assistance to the young people whom Mr Heidt had discovered through his radio program and who had subsequently become part of the Horace Heidt troupe. The Foundation paid salaries to the young entertainers. It provided them with available medical assistance, and paid for the general education and special instructions for many of these young people while they were associated with Mr. Heidt. It provided them with a place to live while they were not touring the country presenting one of Mr. Heidt's shows. During the summer of 1950 when the city of Los Angeles was having a severe polio epidemic, the Foundation bore the expense of spraying the area of Van Nuys, a suburb of Los Angeles, where Mr. Heidt's ranch was located and the place where the young people of his troupe lived. The Foundation made numerous contributions to charities.

The young entertainers who were associated with Mr. Heidt in his Youth

---

2. The articles of incorporation read, in part, as follows:

"II. That this corporation is organized and shall be operated exclusively for religious, charitable or educational purposes and no part of its activities shall consist of carrying on propaganda or otherwise attempting to influence legislation.

"III. That it is a corporation which does not contemplate the distribution of gains, profits or dividends to the members thereof.

\* \* \* \* \*

"VII. This corporation shall have all of the rights and powers set forth in Section 9501 of the Corporations Code of the State of California."

Opportunity Program also displayed their talents on "The American Way" show, a program calculated to demonstrate "the American way of life" to civilian and military audiences in the United States and in Europe.

On July 10, 1950, the plaintiff filed with the Internal Revenue Service form 1023 entitled "exemption affidavit," claiming exemption from Federal income tax under section 101(6) of the Internal Revenue Code. On November 15, 1950, the Commissioner of Internal Revenue advised the plaintiff that it was not exempt from Federal income taxes under that provision.[3] The plaintiff's request for reconsideration of its claim for exemption was denied on May 29, 1952.

The question presented in this case is whether the Horace Heidt Foundation is entitled to an exemption from Federal income taxes under the provisions of section 101(6) of the Internal Revenue Code of 1939 from the period of its organization on September 6, 1949, to May 31, 1950. In order for the plaintiff to come within this provision for the tax period in question it must meet the following conditions:

"1. It must be organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes.

"2. No part of its net earnings can inure to the benefit of any private shareholder or individual.

"3. It cannot carry on propaganda to influence legislation."

We are not concerned here with the third requirement because neither party suggests, nor do we hold, that the plaintiff sought in any way to influence legislation. The important provisions are numbers 1 and 2.

Even though the articles of incorporation of the Horace Heidt Foundation set out verbatim certain provisions of section 101(6) of the Internal Revenue Code, it is necessary to look behind these articles to obtain a realistic view of the workings of the Foundation. The Horace Heidt Foundation was organized by a man who had had many years of experience in the entertainment field. Although primarily concerned with his orchestra and a talent scout program, Mr. Heidt in 1949 conceived the idea of discovering young people who had talent but who lacked sufficient funds for special training. His thought was to assist these young people in getting started in show business and to feature them on a program he would direct. He arranged to have some of the young entertainers live on his ranch in Van Nuys, California, when they were not on tour with the show. When the young performers were touring with Mr. Heidt, they would obtain musical instruction, proper living quarters, and medical assistance, as well as pay for their services. Financing this program dedicated to young people interested in the entertainment field and who were featured on Mr. Heidt's shows, was the stated purpose for which the Horace Heidt Foundation was established.

Although the plaintiff asserts that Mr. Heidt's charitable interests were exemplified by the fact that it made educational, medical, and public health expenditures (findings 16, 17, 18, and 19), the defendant's argument that Mr. Heidt's concern was not exclusively charitable, but also indicated his own prime interest of maintaining the popularity of his shows and the performers, as well as reducing his personal expenses is convincing. In order to be entitled to exemption under section 101(6), a foundation must be "organized and operated *exclusively* for religious, charitable, scientific, literary, or educational purposes", and *no part* of the net earnings of the

---

3. The Commissioner's letter stated in part:

"Inasmuch as a substantial part of your activities is the operation of a business for profit, it is the opinion of this office that you are not organized and operated exclusively for the purposes specified in section 101(6) of the Internal Revenue Code and are not entitled to exemption under that provision of the law. Accordingly, you are required to file Federal income tax returns on Form 1120.

"The collector of internal revenue for your district is being advised of this action."

corporation can *"inure to the benefit of any private stockholder or individual."* [Emphasis supplied.] If profits, whether direct or indirect, inure to the benefit of an individual, then the Foundation cannot be considered a charitable one. See Smith v. Reynolds, D.C., 43 F.Supp. 510. Profits need not be measured by monetary return. In these circumstances Horace Heidt received a great benefit by establishing an organization whereby the recipients of the organization's charitable services were in his employ and benefiting him. See Northwestern Municipal Ass'n v. United States, 8 Cir., 99 F.2d 460.

■ Although many of the activities of the Foundation were benevolent, according to the congressional intent they cannot come within the statutory meaning of "charitable." The essential element of a charitable institution under the exemption provision is that exclusively public, rather than private, interests are served. The institution must perform essential services, the burden of which otherwise would fall upon the Government. See Ways and Means Committee Report on the Revenue Bill of 1938 (H. Rep.No. 1860, 75th Cong., 3d Sess.) (1939-1 Cum.Bull. (Part 2) 729, 742). The young people who received both educational and medical assistance, as well as encouragement, were in reality Mr. Heidt's employees and were, in fact, on a salary basis (findings 13 and 14), even though there was no binding agreement between him and these people (finding 20). In order to keep these young entertainers physically fit and able to display their talents on his program, it was to Mr. Heidt's advantage as a director of a radio program and as an employer to provide these services.

■ The courts in construing section 101(6) of the Internal Revenue Code have followed one of two tests: the

"source" of the income, or the "destination" of the income. This court has adopted the majority view that the destination of the income of the corporation, that is, the purpose and objective to which it is devoted, rather than its source, is the ultimate test.[4]

In following the "destination" test, we hold that while a considerable portion of the expenditures of the plaintiff foundation could be classified as having a charitable purpose (findings 13 and 15), when the whole record is reviewed it becomes evident that those who benefited from the Horace Heidt Foundation were Mr. Heidt himself and the young people who were featured on his shows. The destination of the income of the corporation included private gain, rather than being exclusively for the public benefit.

■ Mr. Heidt's efforts on behalf of the young people whom he trained and assisted to get a start in the entertainment field are commendable. He received numerous awards from charitable organizations. The courts have given a liberal construction in applying statutory provisions which exempt charitable, religious, and educational activities. But when all of the facts connected with the Horace Heidt Foundation, including the actual working of the Foundation and its intimate connection with Mr. Heidt personally, are given consideration we find that the plaintiff organization does not fall within any of the provisions of section 101(6) of the Internal Revenue Code of 1939. It is therefore not exempt from taxation during the period in question.

The petition will be dismissed.

It is so ordered.

FAHY, Circuit Judge, sitting by designation and LARAMORE, MADDEN and WHITAKER, Judges, concur.

4. Sico Co. v. United States, 102 F.Supp. 197, 121 Ct.Cl. 373; Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458; C. F. Mueller Co. v. Commissioner, 3 Cir., 190 F.2d 120; Roche's Beach, Inc., v. Commissioner, 2 Cir., 96 F.2d 776; Debs Memorial Radio Fund v. Commissioner, 2 Cir., 148 F.2d 948; Commissioner of Internal Revenue v. Orton, 6 Cir., 173 F.2d 483; Willingham v. Home Oil Mill, 5 Cir., 181 F.2d 9; Arthur Jordan Foundation v. Commissioner, 7 Cir., 210 F.2d 885; Lichter Foundation, Inc. v. Welch, 6 Cir., 247 F.2d 431.