RUECKWALD FOUNDATION, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rueckwald Foundation, Inc. v. Commissioner
Docket No. 1382-73.
United States Tax Court
T.C. Memo 1974-298; 1974 Tax Ct. Memo LEXIS 20; 33 T.C.M. (CCH) 1383; T.C.M. (RIA) 740298; December 2, 1974, Filed. John F. Papsidero, for the petitioner. Bernard R. Baker III, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1970 [1] in the amount of $2,114.83.The issue to be decided is whether petitioner was an exempt organization under the provisions of section 501(c) (3). [2]
*22 FINDINGS OF FACT Petitioner, Rueckwald Foundation, Inc. (sometimes referred to as the foundation), a corporation organized under the Membership Corporation Law of New York, had its principal office in Bowmansville, New York, at the time its petition was filed. Petitioner's certificate of incorporation includes the following pertinent provisions: SECOND: The purposes for which the corporation is to be formed are: To receive and maintain a fund or funds of real or personal property, or both, and subject, to the restrictions and limitation hereinafter set forth, to use and apply the whole or any part the income therefrom and the principal thereof exclusively for religious, scientific, literary or educational purposes either directly or by contributions to organizations duly authorized to carry on religious, scientific, literary or educational activities * * * The income and principal will be used to accomplish research and development exclusively in the fields of education, literature, science and religion. All scientific research will be made available to the public on non-discriminatory basis. No part of the net earnings of the Corporation shall inure to the benefit of *23 any member, trustee, officer of the Corporation or any private individual except that reasonable compensation may be paid for services rendered to or for the Corporation effecting one or more of its purposes. And no member, trustee or officer of the Corporation or any private individual shall be entitled to share in the distribution of the corporate assets on dissolution of the Corporation. * * * In the event of dissolution the assets will be distributed only to institutions qualified under Section 501(c) (3) [3] of the Internal Revenue Code of 1954. All activities of the Foundation will be governed by applicable state and federal law governing non-profit tax exempt organizations. * * * FIFTH: The number of trustees of the corporation shall not be less than three (3) nor more than fifteen (15). The Board of Trustees shall constitute the directors of the corporation. SIXTH: The names and addresses of the Trustees until the *24 first annual meeting of the corporation and with respect to any trustee residing in the City, the street and number and any other particular description of his residence are: Martin C. Rueckwald 5211 Genesee Street Bowmansville, New York 14026 Eleanor M. Rueckwald 5211 Genesee Street Bowmansville, New York 14026 Joan E. Rueckwald 5211 Genesee Street Bowmansville, New York
14026 * * * In response to an application filed by petitioner, the district director of internal revenue determined, by letter dated October 27, 1967, that petitioner was entitled to an exemption from Federal income taxes under section 501(c) (3). The determination was subject to the understanding that petitioner's operations would conform to those purposes stated in its application. Subsequently, by letter dated November 9, 1970, respondent also classified petitioner as a private foundation as defined in section 509(a). At the time of petitioner's incorporation, one of its stated purposes was to foster scientific research in the field of chiropractic. However, petitioner was unable to obtain a license to engage in chiropractic in the State of New York, and the minutes of the annual *25 meeting of the members of the foundation, held on December 26, 1968, recite that the chairman (Martin C. Rueckwald, hereinafter Rueckwald) stated that "due to circumstances during the year the emphasis of the Foundation has changed from a research organization." The minutes reflect the adoption of the following resolution describing the altered emphasis: RESOLVED, that the Foundation's activities be the granting of assistance to individuals wishing to further their formal education and to promote and provide assistance for organizations who wish to or have the necessary facilities for scientific research. At all times during 1969 and 1970, Rueckwald, one of the original trustees of petitioner's, served both as president and chairman of the board of petitioner. The other board members were Joan E. Rueckwald and the attorney who assisted in the organization of petitioner. During 1968 Rueckwald's mother, May A. Lacy (hereinafter Mrs. Lacy), was an invalid and unable to care for herself, having suffered a series of strokes. She was placed in a nursing home in early July 1968. Shortly after Mrs. Lacy entered the nursing home, her husband died. The full burden of seeing that his *26 ailing mother was cared for while she was in the nursing home fell upon Rueckwald. He also bore the responsibility of serving as her legal guardian. At least by 1969, Rueckwald was in serious financial difficulty, "practically bankrupt." On or about November 25, 1968, Mrs. Lacy transferred certain real property to petitioner by deed reciting consideration of "One & No More Dollars." The conveyance was conditioned upon a promise, made on behalf of petitioner by Rueckwald, to pay for all of Mrs. Lacy's needs and requirements for her "personal well-being." No limitations, financial or otherwise, were placed upon this support obligation. Rueckwald alone was to determine what expenses of Mrs. Lacy's came within the scope of the agreement. The agreement also provided that any funds remaining after payment of Mrs. Lacy's expenses were to be used to pay college expenses incurred by Rueckwald's son. While real property comprised the bulk of the assets transferred, she also assigned to petitioner her monthly social security checks. In keeping with this support obligation, petitioner paid $6,632.25 in 1969 and $6,370.87 in 1970 for Mrs. Lacy's support. These amounts included all of *27 Mrs. Lacy's nursing home and other living expenses. Late in 1968 petitioner arranged for the sale of the real estate transferred to it by Mrs. Lacy to unrelated third parties for $17,500. The real estate closing took place in early 1969, and shortly thereafter petitioner purchased the assets of a company known as C & E Gebauer Sawdust & Shavings (hereinafter Gebauer), including real and personal property, customer lists, and goodwill, as well as its business name. The purchase price of $35,000 was covered by a mortgate in the amount of $26,300, given to the sellers by petitioner, and a cash balance, paid by petitioner from the sale proceeds of Mrs. Lacy's real estate. Beginning on January 1, 1969, petitioner leased the Gebauer assets to another taxable corporation, Mamax Industries, Inc. (hereinafter Mamax). The term of the lease extended through December 31, 1971. During 1969 and 1970, Rueckwald was president and sole stockholder of Mamax, but he received no salary from that corporation. He did, however, receive weekly salary payments in 1969 and 1970 from Gebauer in the amounts of $77 and $100 to $125, respectively, in return for sundry services which he performed. *28 The lease between Mamax and petitioner provided for a rental based upon a percentage of Gebauer's net profits as follows: the Tenant shall pay the annual rent of eighty-five (85%) percent of the net profits earned in the business after all operating expenses have been paid and after all the expenses set forth in this lease which [are] the liability of the tenant has [sic] been paid. The lease further provided that it would be automatically extended for additional 2-year terms unless Mamax indicated its intention not to renew. In addition, the lease gave Mamax an option to purchase any or all of the assets of Gebauer "upon such terms and conditions as may be agreed by the parties." Such purchase could be made at any time during the lease or extensions thereof at a price equal to fair market value at such time, such value to be determined by Rueckwald. The lease was signed by Rueckwald in his capacity as president of both parties. In 1970 Gebauer, as a division of Mamax, paid petitioner $20,833.50, purportedly as rent under the lease, and on a tax return filed in the name of "C & E Gebauer - Mamax Ind Inc" reported a loss on its operations. Thus, to enable petitioner to *29 meet its obligations arising under the Gebauer mortgage and the agreement for the support of Mrs. Lacy, Gebauer and Mamax transferred their net income to petitioner, and the funds so transferred were deducted as rental payments by Gebauer. During 1969 and 1970, petitioner maintained offices in Rueckwald's Bowmansville home. Petitioner's returns reflect deductions for rent and utilities. The amounts so deducted were used to defray Rueckwald's personal expenses for maintaining his home. A number of other purely personal expenses of Rueckwald's were paid by petitioner. As of 1969 and 1970, Rueckwald's personal residence was encumbered by two mortgages. One was payable to the Erie County Savings Bank (Erie), and the other was payable to Rueckwald's attorney as trustee for another client. Petitioner made the mortgage payments due Erie, including interest, taxes, and principal, in the amounts of $1,458.94 in 1969 and $652.74 in 1970. The amounts of these mortgage payments by petitioner were included in office rent and utilities on its returns and records. Still other personal and family expenses of Rueckwald's were paid by petitioner. During 1969 and 1970, Rueckwald and his *30 family enjoyed unlimited use of petitioner's automobiles acquired through earnings from its business operations, and petitioner paid all expenses, including insurance, to maintain them. Moreover, during 1970, petitioner paid the premiums on two life insurance policies on Rueckwald's life. His family was the beneficiary of at least one of these policies. In addition, during 1969 and 1970, petitioner paid college expenses of Rueckwald's son in the amounts of $658 in 1969 and $1,836 in 1970. Also, certain other moneys borrowed by petitioner ultimately found their way to Rueckwald. By letter dated March 3, 1972, the district director of internal revenue revoked the exemption from Federal income taxation it had previously granted petitioner, effective for the taxable periods beginning on or after January 1, 1968. The notice of deficiency issued to petitioner treated it as a taxable corporation and disallowed certain deductions for expenditures made by petitioner. Apart from the contention that petitioner is exempt from Federal income taxes, the disallowed deductions have not been placed in dispute. ULTIMATE FINDINGS OF FACT 1. Petitioner was operated during 1969 and 1970 *31 to serve private rather than public purposes. 2. Substantially all the net income of petitioner inured to the benefit of private individuals, including Rueckwald, Mrs. Lacy, and Rueckwald's son. OPINION The only issue is whether petitioner was a corporation or foundation "organized and operated exclusively for religious, charitable, scientific, * * * or educational purposes," no part of the net earnings of which inured "to the benefit of any private shareholder or individual" during 1969 and 1970. Sec. 501(c) (3). [4] If so, it is exempted from Federal income taxes. Otherwise, it is not. If respondent is correct in maintaining that the claimed exemption is inapplicable, there is no question as to the propriety of the retroactive revocation of petitioner's exempt status, see Automobile Club v. Commissioner, 353 U.S. 180, 183-185 (1957); Stevens Bros. Foundation, Inc. v. Commissioner, 324 F.2d 633 (C.A. 8, 1963), certiorari denied 376 U.S. 969 (1964); Birmingham Business College, Inc. v. Commissioner, 276 F.2d 476 (C.A. 5, *32 1960); Benedict Ginsberg, 46 T.C. 47, 54-55 (1966); and petitioner does not contend otherwise. We hold *33 that petitioner has not shown that it meets the exemption requirements of section 501(c) (3). While petitioner's certificate of incorporation, set forth in part in our Findings, indicates that it was organized for the purposes specified in section 501(c) (3), that is not enough to qualify petitioner for the exemption.Cf. Stevens Bros. Foundation, Inc. v. Commissioner, supra. The organization must also engage "primarily in activities which accomplish one or more of such exempt purposes." (3)-1 (3)-1 Sec. 1.501(c) (3)-1(c) (1), Income Tax Regs. Petitioner does not meet this operational test. The evidence does not show that petitioner, controlled by Rueckwald, his family, and his attorney, was engaged in any activities tending to accomplish any of the exempt purposes specified in section 501(c) (3). The evidence shows that petitioner's activities were limited to (1) paying the nursing home, medical, and other expenses of Mrs. Lacy's (Rueckwald's mother), (2) paying some of the college expenses of Rueckwald's son, (3) holding title to and collecting *34 rent paid for the use of the Gebauer assets, and (4) maintaining automobiles and Rueckwald's personal residence and paying certain other of his personal expenses. None of these activities served a public purpose.All of them served the private interests of the Rueckwald family. (3)-1 (3)-1 Sec. 1.501(c) (3)-1(d) (1) (ii), Income Tax Regs. [5] They do not qualify petitioner for the claimed exemption. Cf. Horace Heidt Foundation v. United States, 145 Ct. Cl. 322, 328, 170 F. Supp. 634, 638 (1959). We think it also equally clear that a substantial part - indeed all - of petitioner's income inured to the benefit *35 of private individuals. None of it was shown to have been expended for public purposes. Rueckwald's mother was cared for in the nursing home. His son's college expenses were paid. Rueckwald's automobile expenses and some of his home expenses were paid. These expenses were paid largely from the net income derived from the rental of the Gebauer assets, and the payments clearly inured to the benefit of Rueckwald and his family. See, e.g., General Contractors' Ass'n v. United States, 202 F.2d 633, 636-637 (C.A. 7, 1953); Founding Church of Scientology v. United States, 188 Ct. Cl. 490, 499-500, 412 F.2d 1197, 1202 (1969), certiorari denied 397 U.S. 1009 (1970); Horace Heidt Foundation v. United States, 145 Ct. Cl. at 328, 170 F Supp. at 637-638 (1959). The facts before us show that Rueckwald was faced with heavy personal and financial obligations, including the care of his mother and the college education of his son, at a time when, according to his testimony, he was "practically bankrupt." Petitioner was created, and to it was transferred Mrs. Lacy's real estate. The proceeds of the sale of that property were used to help *36 support her and to make the downpayment on the Gebauer assets, and those assets were then leased to Mamax, Rueckwald's corporation. Mamax paid most of its net income [6] to petitioner. Petitioner's income from all sources, including the amounts ordinarily payable as income tax, was then available for use to benefit the Rueckwald family. Section 501(c) (3) does not countenance such an arrangement. Petitioner contends that the payments for the care of Mrs. Lacy and for the education of her grandson - Rueckwald's son - were *37 in the nature of an annuity reserved out of the transfers made to petitioner. On this ground petitioner maintains there was no inurement of net income to a private individual within the meaning of section 501(c) (3). The answer is that Mrs. Lacy's conveyance of the property to petitioner contained no annunity provisions. Even if we are to give full credence to Rueckwald's testimony that, on behalf of petitioner, he made such an agreement with his mother, he admitted it was open-ended. It was not an annuity agreement in any sense of the term. He testified that he agreed petitioner would meet all her needs and that any balance of the proceeds of her property would be used for the education of Rueckwald's son. Rueckwald was the sole arbiter of the amounts to be paid. Such an open-ended arrangement which measures the amounts to be paid by the determination of the founder of the organization, the needs of the beneficiaries, and the availability of funds cannot conceivably qualify as a reservation of an interest in the transferred property within the meaning of Lederer v. Stockton, 260 U.S. 3 (1922), and Edward Orton, Jr. Ceramic Foundation, 9 T.C. 533 (1947), *38 affd. 173 F.2d 483 (C.A. 6, 1949). Petitioner has failed to show that it qualifies for income tax exemption under section 501(c) (3). Decision will be entered for the respondent. Footnotes
1. The examination of petitioner's returns covered both 1969 and 1970, but a deficiency was determined only for 1970. ↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. ↩
3. The original certificate referred simply to sec. 501↩. A letter from the Internal Revenue Service suggested an amendment. As a result of a board of directors meeting resolution, "(c) (3)" was inserted in April 1968. 4. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption From Taxation. - An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504. * * * Sec. 501(a) was amended, effective for taxable years beginning after Dec. 31, 1969, by the Tax Reform Act of Dec. 30, 1969, Pub. L. 91-172, 83 Stat. 526, by substituting "502 or 503" for "502, 503, or 504." (c) List of Exempt Organizations. - The following organizations are referred to in subsection (a): * * * (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * * ↩
5. (3)-1 (3)-1 Sec. 1.501(c) (3)-1(d) (1) (ii), Income Tax Regs., provides that - to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests. ↩
6. While the lease called for rent measured by 85% of the net profits earned in the business after all operating expenses and all expenses with which the tenant was chargeable had been paid, several terms, such as "net profits" and "operating expenses," were not defined. Rueckwald admitted that the amount paid to petitioner probably exceeded the amounts payable under the lease, but he explained that "we had to provide sufficient income to provide for notes, payments due on equipment, mortgages, et cetera [on which the foundation was obligated]." A return filed in the name of "C & E Gebauer - Mamax Ind Inc" for 1970 reflects a net loss on its operations. ↩