PATRICK A. HELLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heller v. Commissioner
Docket No. 4180-76.
United States Tax Court
T.C. Memo 1978-149; 1978 Tax Ct. Memo LEXIS 369; 37 T.C.M. (CCH) 643; T.C.M. (RIA) 780149; April 17, 1978, Filed *369 Petitioner, an accountant, organized the Church of Eternal Life and Liberty in 1974 and contributed cash and the furnishings in his rented apartment to the church. Petitioner continued to live in the apartment but the church paid the rental and utility bills. Held: Contributions made by petitioner to the church in 1974 are not deductible as charitable contributions. Held,further: Petitioner's receipts in the form of Federal Reserve Notes are not excludable from income because not redeemable in gold or silver. Patrick A. Heller, pro se. Deborah S. Hack, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $555 in petitioner's income tax for the calendar year 1974. Certain issues having been conceded by respondent, [1] *370 we are to decide: 1. Whether petitioner's receipt of Federal Reserve Notes can be excluded from income because they could not be converted to gold or silver; and 2. Whether petitioner is entitled to charitable deductions under section 170, I.R.C. 1954, [2] for contributions made to the Church of Eternal Life and Liberty. FINDINGS OF FACT Petitioner filed an individual income tax return on the cash basis of accounting for 1974 with the director of the Central Service Center, Cincinnati, Ohio. Petitioner resided in Pontiac, Mich., at the end of 1974 and when the petition in this case was filed. Petitioner's original return was not on a Form 1040 but was merely a computation of taxable income showing an overpayment of tax. An employee of the Internal Revenue Service prepared a Form 1040 reflecting data contained on the document filed by petitioner. Petitioner was an accountant when the document was filed. On the original document filed by petitioner he reported $6,787.79 as gross income, including salary of $6,606.60, interest in the amount of $173.94, commissions of $6.25, and *371 $1 from "gambling winnings." He claimed various deductions which appear to total $4,171.56. The return listed contributions, in cash and property, totaling $4,285.19, but only $3,243.89 of this amount was claimed as a deduction because of "limitation." Of the listed contributions $4,069.35 was "receipted cash" contributions to the Church of Eternal Life and Liberty (hereinafter referred to as the church) and $203.84 of the listed contributions represented the value of various miscellaneous articles of furniture and office supplies given to the church. In September of 1975 petitioner filed a claim for refund of the taxes he paid for 1974 alleging that under Article I, section 10, of the United States Constitution and the Coinage Act of 1900 he received no income in 1974. At the trial petitioner explained that since the Federal Reserve Notes he received in 1974 were not redeemable in gold or silver they did not constitute income. The claim for refund was denied. Petitioner was in college during the first part of 1974. Upon leaving school he was employed by an accounting firm. He also sold matches for a commission. Late in 1973 petitioner contacted an organization named the Church *372 of the Tolerants requesting materials on the Church of the Tolerants and the procedure for becoming a minister ordained by that organization. Upon receipt of those materials, petitioner examined them and applied for a ministry certificate, affirming that he agreed with their underlying principles. Petitioner did not take any formal training for this ministership. He received a certificate from the Church of the Tolerants designating him as a minister. The certificate was to expire December 31, 1974. At some unspecified date during 1974, petitioner decided to form the Church of Eternal Life and Liberty. On June 2, 1974, Articles of Association and Operating Rules were subscribed to by petitioner, Anna Bowling, and James Hudler. The church had about six members. The original articles of association contained no provisions stating that the church was organized exclusively for religious purposes, that no part of its net earnings should inure to the benefit of its members or private persons, and that no part of its activities should be influencing legislation. Such provisions were apparently added to the articles in 1975. At the time the church was organized petitioner was designated *373 as minister of the church. Under the provisions of the operating rules, as minister, petitioner was charged with performing the administrative functions of the church and was also designated to be provided with a housing allowance from the church. The minister was also required to store and keep all of the church's records on his residential premises. Petitioner, as the church's sole minister, was the only person authorized to designate other persons church ministers. Petitioner, as minister of the church, was the person designated to endorse receipts acknowledging contributions to the church. The church, during 1974, did not attempt to incorporate, nor did it attempt to register with the State of Michigan or the Internal Revenue Service as a church or other type of exempt organization. During 1974 petitioner filed a certificate with the Oakland County Clerk stating that he alone was assuming the name of the Church of Eternal Life and Liberty for business purposes. During 1974 the church had no regular meeting place and did not own any real property. It held title to the furniture and equipment located in petitioner's apartment. These assets were previously owned by petitioner *374 and donated by him to the church on December 26, 1974. This was accomplished by a two-step transaction. First, petitioner "sold" the assets to the church, evidenced by a "bill of sale." In return he received a note from the church, which he promptly forgave. During 1974 almost the entire income of the church was provided by the contributions made by petitioner. The contributions petitioner claimed on his tax return were evidenced by receipts signed by him in his capacity as minister of the church. No records accounting for the receipts and disbursements of the church were offered in evidence. The church paid the full rent and utilities on petitioner's apartment, even though a leasehold agreement was in petitioner's name. The church's activities during 1974 consisted almost entirely of receipt of cash contributions and other income and the expenditure of those same amounts for the rent and utilities of petitioner's personal residence. The personal philosophy and beliefs of petitioner were reduced to writing and "organized" into the church. They were more in the nature of economic and political theory than religious tenets. On February 18, 1976, respondent sent petitioner a notice *375 of deficiency for the taxable year 1974 disallowing the charitable contributions claimed on petitioner's original 1974 tax return. Since this adjustment reduced petitioner's itemized deductions to less than the standard deduction, petitioner's taxes were recalculated allowing him the standard deduction. ULTIMATE FINDING OF FACT The net earnings of the Church of Eternal Life and Liberty inured to the benefit of petitioner.
OPINION The first issue is whether petitioner's receipt of Federal Reserve Notes is income in 1974. Petitioner argues that he received no income in 1974 because he did not receive dollars that could be converted to gold or silver. The Court has dismissed out of hand similar contentions on numerous occasions, see Sibla v. Commissioner,68 T.C. 422, 430 (1977); Gajewski v. Commissioner,67 T.C. 181 (1976); Hartman v. Commissioner,65 T.C. 542 (1975); Cupp v. Commissioner,65 T.C. 68 (1975), affd. without opinion 559 F. 2d 1207 (3d Cir. 1977), and we find such arguments no more compelling now than before. Petitioner received income during 1974 as originally reported and that amount was properly taxable to petitioner. The remaining issue is whether petitioner is entitled *376 to deductions for charitable contributions in 1974 for contributions made to the Church of Eternal Life and Liberty. Section 170(a) allows a deduction for charitable contributions paid within the taxable year. Under section 170(c)(2) a qualifying charitable contribution includes a contribution or gift to or for the use of-- A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provisions of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which insures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene *377 in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). * * * Among the various limitations for an organization to qualify under section 170(c)(2) is the requirement that no part of its net earnings inure to the benefit of any individual. This requirement insures that a qualifying organization serves a public purpose rather than a private interest. See Horace Heidt Foundation v. United States,170 F. Supp. 634, 638 (Ct. Cl. 1959). What emerges from the facts before us is an organization controlled by petitioner that functioned to serve his personal living needs. Petitioner, as "minister" of the church, was charged with complete control of the church's assets under the operating rules in effect during 1974. It was petitioner who determined what expenses the church would pay, and the conducted all the church's financial transactions. Through his control, *378 petitioner caused the church to pay his rent and utilities and do little else. These expenses were the major expenditures of the church during 1974. The only assets acquired by the church consisted of furniture and personal effects, all of which were used by petitioner to his own advantage. The record is devoid of any substantial services performed by petitioner in return for these housing benefits. Apart from vague testimony that Heller occasionally conducted "religious services" at the residences of certain church members, the only evidence in the record regarding Heller's services is that he attended two meetings of the Lake Orion-Oxford Public Services and four meetings of the Ann Arbor Libertarian League. We are provided little detail about these meetings except that the Ann Arbor Libertarian League was operated by James Hudler, a friend of petitioner, and that it was a philosophic organization to study rational existence and that it also branched off into studying history and economics. Apparently Heller's major service in his capacity as church minister was to coordinate the distribution and sale of church materials to the Ann Arbor Libertarian League and others. Heller, *379 also a full-time accountant, performed no substantial services to warrant the housing benefits paid by the church. Compare Morey v. Riddell,205 F. Supp. 918 (S.D. Calif. 1962). As a result of Heller's control or influence over the church, we find he received unreasonable housing benefits. In fact, so far as we can discern, the principal purpose of the church was to provide petitioner with a means for claiming deductions for charitable contributions which he immediately withdrew to pay his personal living expenses. [3] This private inurement, proscribed by section 170(c)(2)(C), disqualifies his gifts to the church from being charitable contributions. Deductions for such contributions therefore must be denied. Petitioner also failed to establish that the Church of Eternal Life and Liberty was a "corporation, trust, or community chest, fund, or foundation," see sec. 170(c)(2), and that it was "organized and operated exclusively for religious" purposes, see sec. 170(c)(2)(B). The testimony of petitioner's witnesses focused more on formalities (such as his "ordination" by mail) rather than on evidence showing the specific operations *380 of the church. However, since private inurement alone is sufficient to preclude the deduction of Heller's contributions, we need not discuss further these other limitations. Decision will be entered under Rule 155. Footnotes
1. Specifically, respondent has conceded that a $300 reimbursed employee business expense is deductible from gross income rather than from adjusted gross income. Deductions for certain other expenses also were conceded except that our disposition of the main issues moots their deductibility (because allowable itemized deductions do not exceed the standard deduction). 2. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise indicated.↩
3. See Clippinger v. Commissioner,T.C. Memo. 1978-107↩.