**CHURCH BY MAIL, INC.,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.**

No. 84–7663.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1985.

Decided July 16, 1985.

J.C. Joyce, Blackstock, Joyce, Pollard, Blackstock & Montgomery, Tulsa, Okl., for petitioner-appellant.

Thomas Gick, Michael Paup, Washington, D.C., for respondent-appellee.

Before ALARCON and POOLE, Circuit Judges, and REED,* District Judge.

ALARCON, Circuit Judge:

Church By Mail, Inc. (hereinafter the Church) appeals from the tax court's judgment on a stipulated administrative record denying the Church tax-exempt status pur-

suant to Internal Revenue Code (I.R.C.) §§ 501(a) and 501(c)(3). The Church contends that the tax court erred in finding that the Church is operated for the non-exempt purpose of providing a market for the services of Twentieth Century Advertising Agency (hereinafter Twentieth), a for-profit organization owned and controlled by Reverend James E. Ewing and Reverend M.R. McElrath, the same persons who serve and control the Church. The Church also argues that the tax court erred in finding that a substantial portion of the Church's net earnings inures to the private benefit of Reverend Ewing and Reverend McElrath and their respective families. Because the tax court's factual findings are supported by evidence in the record, we affirm.

I

## PERTINENT FACTS AND PROCEDURAL HISTORY

Church By Mail, Inc. was incorporated under the laws of Oklahoma on November 28, 1978. The Church's primary activity has been the preparation, printing and mailing of various religious messages, most of which include a request for money. The Church is run by Reverend Ewing and Reverend McElrath. The Church also employs Reverend O.D. Snyder, Reverend D.R. Luce and Brenda Ewing.

The Church's mailing audience includes 3,393,055 homes, of which 167,698 are regular recipients. The Church mails at least one and sometimes as many as three sermons a month to its regular recipients. During the year ending December 31, 1980, the Church received $3,000,155 in donations from the recipients of its sermons.

Twentieth Century Advertising Agency provides the printing and mailing services for the Church's mass mailings. Twentieth is owned and controlled by Reverend Ewing and Reverend McElrath. Twentieth also employs Paul Ewing and Ray McEl-

* Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, sitting by designation.

rath, the ministers' sons. Twentieth and the Church share office space in Beverly Hills, California.

Twentieth's services are provided to the Church under two contracts signed by Reverend Ewing on behalf of both Twentieth and the Church. Pursuant to the contracts, Twentieth subcontracts out the printing and bills the Church at cost plus a 15% commission. Any bills unpaid after ninety days accrue interest charges at a rate of 1½% per month. In accordance with the contracts, Twentieth advanced $2,867,180 to the Church between April 1980 and February 1981. During this same period, the Church repaid principal of $1,757,178, and paid Twentieth $180,515 in commissions and $26,549 in interest. Approximately two-thirds of the time of Twentieth's employees is devoted to work for the Church.

In 1980, Twentieth received additional income from unrelated organizations for undisclosed services of approximately $1,144,-000. Although Twentieth apparently has clients unrelated to the Church, Twentieth refuses to identify them. Twentieth does not advertise the availability of its services.

Since 1977, Reverend Ewing and Reverend McElrath have received the following amounts as compensation for services from the Church and Twentieth:

### Reverend Ewing

| Year | Church By Mail | Twentieth |
|---|---|---|
| 1977 | — | — |
| 1978 | none | none |
| 1979 | none | $ 10,600 (from May) |
| (contracts signed in 1980) | | |
| 1980 | $48,600 | $ 88,294.22 |
| 1981 | $48,600 | $111,600 (through August) |

### Reverend McElrath

| Year | Church By Mail | Twentieth |
|---|---|---|
| 1977 | — | — |
| 1978 | None | None |
| 1979 | None | $ 10,600 (from May) |
| (contracts signed in 1980) | | |
| 1980 | $46,500 | $ 86,300 |
| 1981 | $46,500 | $111,600 (through August) |

Both ministers also have the use of automobiles whose total value is $48,789. Since 1980, Brenda Ewing has received $8,550 per year from the Church, and Paul Ewing and Ray McElrath, Jr. have received $30,-000 yearly from Twentieth.

On January 10, 1980, the Church filed an application with the Commissioner of the Internal Revenue Service (hereinafter the Commissioner) seeking recognition of exemption from federal income tax pursuant to section 501(c)(3) of the Internal Revenue Code of 1954. The Commissioner denied the Church's application, finding that the Church was not operated for exempt purposes within the meaning of section 501(c)(3) because it served private rather than public interests and because part of its earnings inures to the benefit of private individuals. The Commissioner also concluded that even if the Church did qualify as an exempt organization pursuant to section 501(c)(3), contributions to the Church were not deductible because it was not a church within the meaning of I.R.C. § 170(b)(1)(A)(i).

The Church filed a petition for declaratory judgment with the tax court on December 1, 1982, requesting that the court determine that the Church is exempt from taxation pursuant to I.R.C. § 501(a) as an organization described in I.R.C. § 501(c)(3), and that contributions to the Church are deductible under I.R.C. § 170(b)(1)(A)(i).[1] By

---

1. The tax court never reached the section 170(b)(1)(A)(i) issue because it concluded that the Church was not an exempt organization pursuant to section 501(c)(3). The Church raises the issue on appeal. Because we conclude that the Church is not organized and operated exclusively for an exempt purpose and that a part of the Church's net earnings inures to the benefit of private individuals, individual contributions to the Church are not "charitable contributions" deductible under section 170(b)(1)(A)(i). See 26 U.S.C. § 170(c)(2)(B) and (C). Therefore, we also need not reach the question whether the Church is a "church" within the meaning of section 170(b)(1)(A)(i). For the same reasons, we do not reach the question whether the Church is a private foundation within the meaning of I.R.C. § 509(a).

stipulation, the facts were submitted to the tax court on the complete administrative record.

The tax court upheld the Commissioner's determination, holding that (1) the Church was operated for the non-exempt purpose of providing a market for Twentieth's services, and (2) a substantial, if not principal, purpose of the Church's operations was to generate income for the private benefit of Reverend Ewing and Reverend McElrath and their respective families.

## II
### STANDARD OF REVIEW

 Although the ultimate determination that the Church does not qualify for tax-exempt status pursuant to I.R.C. § 501(c)(3) is a legal conclusion, it is based solely upon a finding that the Church is operated for a substantial non-exempt purpose. *See* Treas.Reg. § 1.501(c)(3)–1(a)(1). This is a factual finding reviewable under the clearly erroneous standard. *est of Hawaii v. Commissioner,* 71 T.C. 1067, 1079 (1979), *aff'd without opinion,* 647 F.2d 170 (9th Cir.1981); *Commissioner v. John Danz Charitable Trust,* 284 F.2d 726, 735 (9th Cir.1960); *accord, Ohio Teamsters Educ. & Safety Training Trust Fund v. Commissioner,* 692 F.2d 432, 435 (6th Cir. 1982). We defer to the expertise which the tax court brings to bear on its consideration of complex factual situations. *Thompson v. Commissioner,* 631 F.2d 642, 646 (9th Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).

The Church contends that we should undertake a *de novo* review of a tax court's decision on a stipulated record. The Church argues that because no evidence was presented to the tax court (other than the stipulated administrative record) and no witnesses appeared, this court is in as good a position to assess the evidence as was the tax court.

 We disagree. We have consistently held that the existence of stipulated facts does not alter our role in reviewing the evidence. *See, e.g., Azevedo v. Commissioner,* 246 F.2d 196, 197 (9th Cir.1957); *accord, Thompson v. Commissioner,* 631

F.2d at 646; *Commissioner v. John Danz Charitable Trust,* 284 F.2d at 735. *But cf. Demirjian v. Commissioner,* 457 F.2d 1, 4 (3d Cir.1972) (where facts have been fully stipulated and no testimony is taken, appellate court may substitute its factual conclusions and inferences for those of the tax court). The Supreme Court recently approved our strict construction of Fed.R. Civ.P. 52(a) in *Anderson v. City of Bessemer,* — U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The Court held that deference was to be accorded to the original fact finder's findings even when they are based solely upon physical or documentary evidence or inferences from other facts. *Id.* at 1512. The Court observed that the fact that Rule 52(a) emphasizes the special deference which must be paid to credibility determinations does not exclude other categories of factual findings from its scope, noting that the rationale for deference to the fact finder also rests upon the fact finder's special expertise and the parties' focus on proving the facts below. *Id.*

The Church argues that we have approved application of a *de novo* standard of review to a tax court's decision on a stipulated record, citing *Stern v. Commissioner,* 747 F.2d 555 (9th Cir.1984). The Church's reliance upon *Stern* is misplaced. In *Stern,* we observed that a tax court's application of law to *undisputed facts* is reviewable *de novo. Id.* at 557; *accord, Sennett v. Commissioner,* 752 F.2d 428, 430 (9th Cir.1985). In the instant case, the Church disputes the tax court's factual finding that the Church is operated for a substantial non-exempt purpose; the only stipulation was to the submission of the case on the agency record. Therefore, *Stern* is not applicable to the instant case, and the tax court's factual finding is binding on us unless clearly erroneous. *Peck v. Commissioner,* 752 F.2d 469, 472 (9th Cir. 1985).

## III
### TAX–EXEMPT STATUS

 I.R.C. § 501(a) confers tax-exempt status on those organizations which are

organized and operated exclusively for religious, charitable or other specified exempt purposes within the meaning of I.R.C. § 501(c)(3), provided that no part of the organization's net earnings inures to the benefit of any private shareholder or individual. The taxpayer has the burden to demonstrate that it is entitled to tax-exempt status pursuant to section 501(c)(3). Rule 217(c), Tax Court Rules of Practice and Procedure; *Bubbling Well Church of Universal Love, Inc. v. Commissioner*, 670 F.2d 104, 106 (9th Cir.1981).

The dispositive issue in this case is whether the Church meets the "operational" test imposed by I.R.C. § 501(c)(3). The Treasury Regulations specify three criteria for this requirement. First, the organization must be primarily engaged in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3), so that it is "operated exclusively" for exempt purposes. Treas.Reg. § 1.501(c)(3)–(1)(c)(1). Second, the organization's net earnings must not be distributed in whole or in part to the benefit of private shareholders or individuals. Treas.Reg. § 1.501(c)(3)–1(c)(2). (The first two criteria, though separate, frequently overlap. *Canada v. Commissioner*, 82 T.C. 973, 981 (1984)). Third, the organization must not be an "action" organization, i.e., one which spends a substantial part of its time attempting to influence legislation. Treas.Reg. § 1.501(c)(3)–(1)(c)(3). The Commissioner does not contend that the Church violated the "action" requirement, and our examination of the record shows that the Church had no involvement with legislation.

## A. Substantial Non-Exempt Purpose

 In order to establish that it meets the first criterion of the operational test, an organization must prove that it is operated for a public purpose rather than for the benefit of private interests, such as those of the creator or his family, shareholders, or designated individuals. Treas.Reg. § 1.501(c)(3)–1(d)(1)(ii). The presence of a single non-exempt purpose, if substantial in nature, will destroy the exemption. *Better Business Bureau v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945).

There is ample evidence in the record to support the tax court's finding that the Church was operated for the substantial non-exempt purpose of providing a market for Twentieth's services. The employees of Twentieth spend two-thirds of their time working on the services provided to the Church. The majority of the Church's income is paid to Twentieth to cover repayments on loan principal, interest, and commissions. Finally, the potential for abuse created by the ministers' control of the Church requires open and candid disclosure of facts bearing upon the exemption application. *Bubbling Well*, 670 F.2d at 105. The failure to provide information concerning the identity of other clients for Twentieth's services, in combination with all of the other facts which are present in the record, supports an inference that the Church provides the primary market for Twentieth's services.

Moreover, the ministers' dual control of both the Church and Twentieth enables them to profit from the affiliation of the two entities through increased compensation. The income of each minister increased from approximately $10,000 per year in 1979 to approximately $135,000 per year in 1980 and $160,000 for eight months in 1981, apparently as a direct result of the 1980 contractual arrangements between the two organizations. In addition, Twentieth had retained earnings of $774,977 as of March 31, 1981, apparently due in large part to the contracts.

The Church contends that its business provides only a portion of Twentieth's income, and stresses the fact that the contractual arrangements between the two demonstrate that Twentieth is not attempting to profit at the Church's expense. The Church asserts that the tax court erred in refusing to assign primary importance to an examination of the reasonableness of the contracts between the Church and Twentieth.

The Church exaggerates the importance of the contracts. The critical inquiry is not whether particular contractual payments to a related for-profit organization are reasonable or excessive, but instead whether the entire enterprise is carried on in such a manner that the for-profit organization benefits substantially from the operation of the Church. *est of Hawaii v. Commissioner*, 71 T.C. at 1080–81; *see also Presbyterian & Reformed Publishing Co. v. Commissioner*, 743 F.2d 148, 155 (3d Cir. 1984) (courts must look to all objective indicia from which a corporate actor's intent may be discerned); *United States v. Dykema*, 666 F.2d 1096, 1100 (7th Cir.1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 861 (1982) (it is necessary and proper for the I.R.S. to survey all of the activities of an organization to determine whether a non-exempt purpose is furthered).

■ In short, the purpose and objective to which the income of the Church is devoted is the ultimate test in determining whether it is operated exclusively for an exempt purpose. *Horace Heidt Foundation v. United States*, 170 F.Supp. 634, 638, 145 Ct.Cl. 322 (1959). The tax court's determination that the Church is operated for the substantial non-exempt purpose of providing a market for Twentieth's services is supported by evidence in the record and is not clearly erroneous.

## B. Inurement of Earnings to Private Benefit

■ In order to meet the second prong of the operational test, an organization must establish that no part of its net earnings inures to the benefit of a private person. Treas.Reg. § 1.501(c)(3)–1(c)(2); *Bubbling Well Church of Universal Love*, 670 F.2d at 105. Although reasonable salaries may be paid to clergy, the payment of excessive salaries constitutes inurement to the benefit of a private person. *Id.* at 105.

There is evidence in the record supporting the tax court's finding that the combined salaries paid to Reverend Ewing and Reverend McElrath and their families by the Church and Twentieth were excessive. The ministers are responsible for drafting the sermons, conducting church services in various cities and handling the financial commitments of the Church, including the contractual arrangements with Twentieth. The ministers spend only 60% of their time working for the Church and Twentieth. As set forth above, for the first eight months of 1981 both ministers received income from the Church and Twentieth in excess of $160,000. During the same year, Brenda Ewing received $8,550 from the Church while Paul Ewing and Ray McElrath each received $30,000 from Twentieth. Other courts have considered salaries far less than these unreasonable, particularly where the clergy have control over the Church's financial affairs. *See Bubbling Well Church of Universal Love v. Commissioner*, 670 F.2d at 105 (combination of $13,648 parsonage allowance, $19,468 minister's living allowance and $3,924 paid to three family members who were church's sole employees and voting directors was excessive); *Founding Church of Scientology v. United States*, 412 F.2d 1197, 1200–02, 188 Ct.Cl. 490 (1969), *cert. denied*, 397 U.S. 1009, 90 S.Ct. 1237, 25 L.Ed.2d 422 (1970) (salary unreasonable where minister received over $108,000 from the church during four-year period, as well as the use of a business automobile and the payment of benefits to the minister's wife and children). *See also Church of the Transfiguring Spirit, Inc. v. Commissioner*, 76 T.C. 1, 4–6 (1981) (inurement of private benefit to minister who had control over church and received housing allowance of $2,400 in 1979 and $2,640 in 1980); *Unitary Mission Church v. Commissioner*, 74 T.C. 507, 513–15 (1980) (inurement of private benefit where minister received yearly parsonage allowances ranging from $12,000 to $35,650 and controlled church's financial decisions).

Moreover, we believe that services comparable to those performed by the ministers could be obtained from an outside source in an arm's length transaction at a more reasonable cost. *See B.H.W. Anesthesia Foundation, Inc. v. Commissioner*,

72 T.C. 681, 686 (1979) (court should consider all facts and circumstances surrounding petitioner's operations in determining whether comparable services would cost as much if obtained from an outside source in an arm's length transaction). It seems likely that a member of the clergy could be hired to perform the part-time duties for which the ministers are responsible at a salary of considerably less than $160,000 per year.

The Church argues that the tax court erred in examining the ministers' combined salaries from Twentieth and the Church, and contends that the proper inquiry is whether the salaries received by the ministers and their families from *the Church alone* are reasonable. (Reverend Ewing has received $48,600 per year since 1980 while Reverend McElrath has received $46,500 per year during the same period.)

 We disagree. In *Hall v. Commissioner*, 729 F.2d 632 (9th Cir.1984), we held that when a second organization is created which serves to funnel income to the individual who controls the purportedly exempt organization and the income exceeds a reasonable salary, the income inures to the benefit of a private person within the meaning of I.R.C. § 501(c)(3). *Id.* at 634. Because Twentieth funnels income received from the Church to the ministers and their families, it was proper for the tax court to consider evidence of the salaries received from Twentieth as well as those received directly from the Church.

■ Because there is evidence in the record to support the tax court's conclusion that the salaries and benefits paid to the Reverends by Twentieth and the Church were excessive, the court's finding that income from the Church inured to the benefit of private persons was not clearly erroneous.

## IV

### CONCLUSION

Because the Church has failed to meet both the first and second prongs of the operational test under I.R.C. § 501(c)(3),

the tax court's denial of exempt status was proper.

The judgment is AFFIRMED.