INTERNATIONAL POSTGRADUATE MEDICAL FOUNDATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
International Postgraduate Medical Foundation v. Commissioner
Docket No. 8103-83X.
United States Tax Court
T.C. Memo 1989-36; 1989 Tax Ct. Memo LEXIS 38; 56 T.C.M. (CCH) 1140; T.C.M. (RIA) 89036; January 24, 1989
Ronald K. Van Wert, for the petitioner. Joyce M. Resnick, for the respondent. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: This case presents for decision the issue of whether a not-for-profit corporation that conducted continuing medical educational tours abroad operated exclusively for an exempt purpose under section 501(c)(3). [1] The issues for decision are: 1. Whether petitioner operated exclusively for an exempt purpose within the meaning of section 501(c)(3); and 2. Whether petitioner's exemption under section 501(c)(3) was properly revoked. We find that a substantial non-exempt purpose of petitioner's operations was to provide benefit for H and C Tours, a for-profit tour *40 agency. Because we find that petitioner was not operated exclusively for one or more exempt purposes under section 501(c)(3), we hold that petitioner is not exempt under section 501(c)(3). We also find that petitioner's exemption was revoked properly. The parties submitted this case for decision on the stipulated record under Rule 122. The administrative record is incorporated by reference. FINDINGS OF FACT Petitioner
Petitioner's principal place of business was in Newport Beach, California, at the time it filed its petition. Petitioner was incorporated under the General Nonprofit Corporation Law of the State of California on December 23, 1976. Michael Helin was petitioner's founder and original chief executive officer. As petitioner's executive director, Mr. Helin signed petitioner's application for exempt status under section 501(c)(3), Application for Recognition of Exemption, Form 1023. The application was submitted to respondent's District Director in Los Angeles, California on December 29, 1976. Since its inception, petitioner has organized, sponsored and co-sponsored seminars and symposia in the medical field. Its stated purpose is to provide continuing *41 medical education to physicians. Mr. Helin has been a trustee of petitioner from its inception. As of August 14, 1980, the trustees included Mr. Helin, Mr. Donald Regan, an attorney, and Richard Worthington, M.D. Dr. Worthington was ill for a good deal of time. His illness allowed Mr. Helin to assume the duties of executive director. Mr. Helin had control of the daily operations of petitioner. Mr. Helin served as trustee without salary or compensation in recognition of petitioner's regular use of his travel agency, H & C Tours, to arrange the tours for petitioner's seminars. H & C Tours
H & C Tours is a for-profit travel agency located in Newport Beach, California. Mr. Helin is a shareholder and the president of H & C Tours (dba Spallino International Tours). Petitioner used H & C Tours exclusively for all travel arrangements. Mr. Regan is also counsel to H & C Tours. Petitioner's Relationship with H & C Tours
Petitioner and H & C Tours entered into a Travel Services and Administrative Support Agreement (Agreement), effective August 11, 1977. The Agreement allowed competitive bids for travel arrangements, but required acceptance of H & C Tours' price *42 if within 2.5 percent of any competitive bid. Petitioner did not solicit competitive bids from any travel agency for travel arrangements for its tours from the time of its inception until at least August 14, 1980. There is no evidence that petitioner solicited competitive bids from any entity other than H & C Tours. The Agreement also provided that travel charges would be billed by H & C Tours directly to the individuals participating in the tours. H & C Tours would then pay to petitioner "seminar fees" in the sum of 7-1/2 percent of the gross revenue it received for air fares and land arrangements on tours as a result of petitioner's program. In computing H & C Tours' bid for purposes of evaluating competitive costs, petitioner was required to subtract the seminar fees from petitioner's cost for the H & C Tour package. In 1977, H & C Tours paid seminar fees to petitioner in the sum of $ 25,475. Petitioner indicated that H & C Tours' gross revenue from the arrangement was $ 339,667. Petitioner's revenue for 1977 was as follows: Seminar deposits
$  7,658
Tuition
17,821
Seminar Fees
25,475
Advertising
39,025
Total
$ 89,979
The seminar *43 deposits and tuition were received from the participants on the tours. The remaining amounts, totaling $ 64,500, were paid by H & C Tours. Petitioner's expenses for 1977 were reported as follows: Medical conferences
$  4,060
Printing and postage
84,155
Travel
756
Telephone
126
Bank charges
18
Dues
113
Legal and accounting
203
Office expense
425
Miscellaneous
587
Total
$ 90,443
Petitioner physically located its office within the offices of H & C Tours. [2]H & C Tours provided petitioner's secretarial, clerical and administrative personnel for a fee equal to H & C Tours' cost. Such services are only available to petitioner during "reasonable, nonconflicting business hours." H & C Tours also made loans to petitioner. Before petitioner's incorporation, an unincorporated entity with the same name as petitioner arranged medical seminars during tours of foreign countries much like petitioner. The preexisting entity's travel brochures had the same *44 format and were very similar to petitioner's travel brochures. The non-exempt preexisting entity's operations were also very similar to those of petitioner. H & C Tours paid for the cost of production and distribution of the pre-existing entity's brochures. Petitioner's Operations
Petitioner's program is to take physicians on tours throughout the world, [3] each lasting about three weeks. Continuing medical education seminars are provided during the tours. Petitioner's brochures emphasize the sightseeing and recreational component of the tours. [4] The brochures do not describe the medical curriculum for the seminars and symposia. Mention of medical education in the brochures is limited to a statement that participation qualifies for American Medical Association Category One Credit. *45 The record includes a document entitled, "Program Participation Compliance Form, Russia, India, Egypt Medical Meeting May 1977 10 Days (Excluding Travel)." It describes various session times, dates, locations, topics and speakers. The form has a space for the participant's name and a space to indicate whether the participant attended. The spaces are blank. The record also includes one curriculum vitae of an instructor, Michael Dayne Reynolds, M.D. He was the speaker listed for most of the sessions on the compliance form. Other speakers from the host country were also mentioned. There is no indication whether or how the compliance form was used. Educational activities occurred on less than one-half of the days on a typical tour. An average of 4-1/2 hours were devoted to educational activities on such days. Petitioner's brochures indicate the size of each tour group is limited to approximately fifteen doctors and their wives. Family members and friends accompanied tours without attending any of the educational seminars. A letter dated February 8, 1982 from Mr. Regan to respondent's examiner expressed petitioner's plans to change its operations. Petitioner intended to *46 expand the board of trustees to six members including Helin, Regan, Nick Vaziri, M.D., Ronald F. Waters, M.D. and Hugh Wiley. Mr. Wiley was to serve as petitioner's Executive Director. Mr. Helin was to no longer serve as Executive Director. Petitioner's offices were to be moved to space adjacent to Mr. Regan's office. Petitioner's Appeal From Determination Letter, dated May 28, 1982, indicated that petitioner had six members, adding a Frank Voris, M.D. to those listed in the February 8, 1982 letter. With the exception of the addition of a sixth member to the board, the record does not show whether these plans were implemented. Respondent's Determination
By letter dated July 7, 1977, respondent determined (1) petitioner was an exempt organization under section 501(c)(3), and (2) petitioner would not be treated as a private foundation during an advance ruling period to end on December 31, 1981. The July 7, 1977 letter also required petitioner to submit information within 90 days after the end of the advance ruling period to show whether petitioner had raised the public support necessary to avoid private foundation status during its advance ruling period. In a letter *47 dated December 20, 1981, respondent's District Director requested petitioner to provide information about public support raised by petitioner. After being returned as inadequately addressed, the December 20, 1981 letter was remailed on March 29, 1982. By letter dated April 30, 1982, Mr. Helin responded to the requests for information regarding petitioner's sources of income. Apparently before respondent received Mr. Helin's letter, respondent's District Director sent a letter dated May 3, 1982. This letter informed petitioner that it would be presumed to be a private foundation as of the 91st day after the end of its advance ruling period since none of the information requested by respondent had been received for respondent to make a final determination on petitioner's status as a private foundation. This letter indicated the person to contact as Irma Hill. In another letter dated May 3, 1982, respondent's District Director sent to petitioner a copy of an examination report proposing to revoke petitioner's exempt status. The letter named R. McGee as the person to contact. By letter dated May 28, 1982, petitioner appealed the proposed adverse determination and requested a *48 hearing. In a letter dated June 30, 1982, respondent's appeals officer, Sanford Robbins, acknowledged petitioner's request and promised to set up a hearing. After receipt of Mr. Helin's letter regarding petitioner's sources of income, respondent sent a letter to petitioner dated July 16, 1982, which provided: Based on the information you recently submitted, we have classified your organization as one that is not a private foundation within the meaning of section 509(a) of the Internal Revenue Code because you are an organization described in section 509(a)(2). Your exempt status under section 501(c)(3) of the Code is still in effect. This classification is based on the assumption that your operations will continue as you have stated. If your sources of support, or your purposes, character, or method of operation change, please let us know so we can consider the effect of the change on your exempt status and foundation status. The July 16, 1982 letter specifically superseded the May 3, 1982 letter from the District Director. This letter named I. Hill as the person to contact. Petitioner contends this letter constitutes a final determination. *49 On September 3, 1982, respondent's appeals officer, Sanford Robbins, sent petitioner a letter scheduling the requested hearing with respondent's appeals office on September 21, 1982. By letter dated September 24, 1982, petitioner confirmed that the hearing was postponed until November 10, 1982. In a letter dated January 10, 1983, respondent issued a final adverse determination letter which states: This is a final adverse determination as to your exempt status under section 501(c)(3) of the Internal Revenue Code. Our adverse determination was made for the following reason(s): You are not operated exclusively for one or more exempt purposes specified in Section 501(c)(3) of the Internal Revenue Code. Furthermore, you are operated to serve private rather than public interests. The final adverse determination letter was from Noel E. Ezekiel, Associate Chief, Appeals Office, Los Angeles, California. It was executed by H. R. Gonzales, for Noel E. Ezekiel. [5] This letter indicates the person to contact as Sanford Robbins. *50 Respondent obtained no new facts between July 16, 1982 and January 10, 1983. After exhausting its administrative remedies within the meaning of section 7428(b)(2), petitioner timely filed a petition with this Court seeking a declaratory judgment pursuant to section 7428(a). OPINION Tax Exempt Status
Section 501(a) provides that organizations described in section 501(c) shall be exempt from taxation. Section 501(c)(3) includes "Corporations * * * organized and operated exclusively for * * * educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *." In order to be classified as an exempt organization under section 501(c)(3), the organization must be both organized and operated exclusively for one or more exempt purposes. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. Respondent does not allege that petitioner failed the organizational requirement. We must therefore decide whether petitioner operated exclusively for an exempt purpose. Operational Requirement
The Treasury Regulations specify three separate requirements. Section 1.501(c)(3)-1(c)(1), Income Tax Regs., describes the *51 first operational test criteria as follows: (c) Operational test. (1) Primary activities. An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. Although section 501(c)(3) uses the term "operated exclusively," an organization satisfies the operational test if it engages primarily in activities which accomplish one or more exempt purposes; if only an insubstantial part of an organization's activities is directed to a nonexempt purpose, it will not be disqualified from exemption. World Family Corp. v. Commissioner,81 T.C. 958, 963 (1983). Substantial Nonexempt Purpose
Respondent alleges that petitioner's operations include two substantial nonexempt purposes: (1) benefit for H & C Tours and Helin; and (2) sightseeing and recreation activities. Petitioner alleges that its operations are confined to the exempt purpose of education. We agree with *52 respondent. The existence of a "single noneducational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes." Better Business Bureau v. United States,326 U.S. 279, 283 (1945); Nat. Assn. of American Churches v. Commissioner,82 T.C. 18, 28-29 (1984). Conversely, an organization engaging in nonexempt activities can keep its exempt status as long as such activities are only incidental and less than substantial. Church in Boston v. Commissioner,71 T.C. 102, 107 (1978). The "less than substantial" activities standard is not defined in the Code or the regulations for purposes of section 501(c)(3). This is a question of fact to be decided in light of all relevant facts and circumstances. World Family Corp. v. Commissioner,81 T.C. at 967. Whether a substantial nonexempt purpose is being furthered is a question of fact. Christian Stewardship Assistance, Inc. v. Commissioner,70 T.C. 1037, 1040 (1978). Factual inferences may be drawn from the administrative record by this Court in the performance of its review function. *53 Nat. Assn. of American Churches v. Commissioner,82 T.C. at 20. Benefit to Mr. Helin and H & C Tours
When a for-profit organization benefits substantially from the manner in which the activities of a related organization are carried on, the latter organization is not operated exclusively for exempt purposes within the meaning of section 501(c)(3), even if it furthers other exempt purposes. Church by Mail, Inc. v. Commissioner,765 F.2d 1387, 1392 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; Copyright Clearance Center, Inc. v. Commissioner,79 T.C. 793 (1982); est of Hawaii v. Commissioner,71 T.C. 1067, 1080-1081 (1979), affd. by unpublished opinion 647 F.2d 170 (9th Cir. 1981). [6]
We find that a substantial purpose of petitioner's operations was to increase the income of H & C Tours. H & C Tours benefits from the distribution and production of brochures which solicit customers for tours arranged by H & C Tours. Approximately 90 percent of petitioner's total revenue for *54 1977 was expended on production and distribution of brochures. The terms of the Travel Services and Administrative Support Agreement further insured that H & C Tours would substantially benefit from petitioner's operations. Petitioner did not solicit competitive bids from any travel agency other than H & C Tours. [7] In 1977, H & C received $ 339,667 in gross revenue for air fares and land arrangements as a direct result of petitioner's tours. Mr. Helin controlled petitioner and exercised that control for the benefit of H & C Tours. Petitioner spent about 90 percent of its total revenue for 1977 on production and distribution of brochures. The brochures provided a direct benefit to H & C Tours in the form of air and land travel billings. The administrative record supports the finding that Mr. *55 Helin formed petitioner to obtain customers for his tour business. In addition, to establish that an organization meets the first criterion of the operational test, it must prove that it is operated for a public purpose rather than for benefit of private interests, such as those of the creator or designated individuals. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.Church by Mail, Inc. v. Commissioner,765 F.2d at 1391. This private benefit restriction is analogous to, but distinct from, the private inurement proscription in section 501(c)(3) and section 1.501(c)(3)-1(c)(2), Income Tax Regs.Canada v. Commissioner,82 T.C. 973, 981 (1984). Respondent's final adverse determination letter denied petitioner exempt status on the grounds that it is not operated exclusively for one or more exempt purposes specified in section 501(c)(3) and that it serves a private rather than public interest. We agree. Sightseeing and recreational activities
If the organization's activities are directed at providing opportunities for recreational endeavors, its claim to exempt status under section 501(c)(3) will be denied. Schoger Foundation v. Commissioner,76 T.C. 380 (1981); *56 [8]Syrang Aero Club, Inc. v. Commissioner,73 T.C. 717 (1980). [9]
Petitioner's brochures heavily emphasize the recreational sightseeing activities of the tours. [10] Continuing medical education course descriptions are not included *57 in petitioner's brochures. Petitioner has not established that the recreational sightseeing activities were insubstantial or only incidental to petitioner's educational purposes. We find that we see no reason to believe that petitioner provided a bona fide medical education program. Respondent's Final Adverse Termination Procedures
Petitioner argues that respondent failed to follow proper procedures in issuing its final adverse determination letter. Specifically, petitioner claims that the letter dated July 16, 1982, from respondent's District Director to petitioner constituted a final determination regarding its status under section 501(c)(3). However, petitioner cites no basis in support of his *58 claim. Moreover, this Court has refused to look behind the revocation letter to examine respondent's motives for the administrative policy or procedure for issuing the letter revoking exempt status under section 501(c)(3). Estate of Brimm v. Commissioner,70 T.C. 15, 22-23 (1978). We find that the July 16, 1982 letter was not a final determination of petitioner's exempt status. The letter indicates that petitioner satisfied the public support test of section 509(a)(2) during its advance ruling period. It provides, "Your exempt status under section 501(c)(3) of the Code is still in effect." It did not purport to be a final determination regarding exempt status under section 501(c)(3). On the other hand, the letter from respondent to petitioner dated January 10, 1983, explicitly states, "This is a final adverse determination as to your exempt status under section 501(c)(3) of the Internal Revenue Code." The January 10, 1983 letter applied to the period 1977 through the present [January 10, 1983]. Petitioner also attacks the validity of the final adverse determination on grounds that it was issued by an allegedly unauthorized person. Noel *59 E. Ezekiel, Associate Chief, Appeals Office, Los Angeles, California had authority pursuant to Deleg. Order No. 113 (Rev. 7), 1982-1 C.B. 340, to issue the final adverse determination letter. The delegation order expressly states that this authority may not be redelegated. We find that authority was not redelegated. The letter was to petitioner from Noel E. Ezekiel, Associate Chief, Appeals Office. It was signed for Noel E. Ezekial by H. R. Gonzales. Petitioner believes that there are numerous procedural defects in the adverse determination by respondent. However, petitioner cites no authority to convince us to find in his favor on this point. Accordingly, we find the final adverse determination by respondent to be valid. Conclusion
Petitioner has the burden of proof to demonstrate that respondent's determination is wrong. Virginia Education Fund v. Commissioner,85 T.C. 743, 750 (1985), affd. per curiam 799 F.2d 903 (4th Cir. 1986); Rule 217(c)(2)(i). Petitioner has failed to meet this burden. We hold that petitioner is not operated exclusively in furtherance of purposes described in section 501(c)(3). We also hold *60 that respondent properly revoked petitioner's exemption under section 501(c)(3). Accordingly, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect when the petition was filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The administrative record indicates that petitioner also used addresses in Newport Beach and Costa Mesa, California. The record does not establish when those addresses were effective.↩
3. For example, during 1977, petitioner conducted six tours to the following places: ↩
May
Russia, India and Egypt
July
Kenya, East Africa
August
Japan, Singapore, Indonesia, Thailand and
Hong Kong
September
Russia and India
October
India, Nepal and Sri Lanka
November
Kenya, East Africa
4. Petitioner's 1977 brochure included the following description of sightseeing activities on its 1977 tours: AFRICA: Big game drives throughout East Africa, including Mt. Kilimanjaro, Serengeti Plains, Dr. Leaky's Camp, Tsavo Reserve. RUSSIA, INDIA, EGYPT: The pyramids and Sphinx in Cairo with a special flight to Luxor and visit the Valley of the Kings and King Tut's Tomb. Houseboats on Dal Lake in unforgettable Kashmir -- deluxe with private bath, living room, servants on 24 hour call -- surrounded by the Himalayan Foothills, Shalimar Gardens, Kashmiri Bazaars and the unforgettable Taj Mahal. INDIA, NEPAL, & SRI LANKA: This is a most unique journey, designed to bring you as close as possible to Tibet, and areas now totally inaccessible to the visitor. You will also visit the world's most magnificent arboretum on the island of Ceylon. YUGOSLAVIA, VIENNA: Visit Sarajevo, the city where "the shot heard round the world" triggered WWI, the sixteen beautiful Plitvice Lakes and Postojna Caves. Then to the Austrian cultural center, Vienna, where the Danube River gives a setting for the Vienna State Opera, Cathedral of St. Stephen, University of Vienna, and the rich Kunsthistorisches Museum.↩
5. The copy of this letter in the record is not signed. It has the signature block of "Noel E. Ezekiel, Associate Chief," with a handwritten "S" in a circle, indicating that the letter was signed. In his answer, respondent admits the letter was signed by H. R. Gonzales. Respondent explained that the signature was for and with authority of Noel E. Ezekiel.↩
6. See also Martin S. Ackerman Foundation v. Commissioner,T.C. Memo. 1986-365↩.
7. Petitioner claimed that H & C Tours was the only agency within a reasonable distance of petitioner. There is nothing in the administrative record to support petitioner's contention. Moreover, we find it difficult to accept in light of the brochures in the administrative record of other entities with similar medical continuing education programs in conjunction with foreign travel.↩
8. In Schoger Foundation v. Commissioner,76 T.C. 380, 386 (1981), we said: Petitioner will not qualify for exemption if a nonexempt activity is more than an insubstantial part of its activities, or if an activity of petitioner has more than an insubstantial nonexempt purpose. * * * The regulations and cases clearly contemplate that a single activity may be carried on for more than one purpose. If a substantial secondary purpose is not an exempt one, qualification under section 501(c)(3)↩ will be denied. [Citations omitted.] 9. In Syrang Aero Club, Inc. v. Commissioner,73 T.C. 717, 720-721 (1980), we said, "The operational test requires an organization's activities be primarily those which accomplish one or more exempt purposes as specified in section 501(c)(3) and not, except to an insubstantial part, those which do not further an exempt purpose. Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.↩"
10. Petitioner complains that many other organizations whose brochures are a part of the administrative record include both sightseeing and continuing medical education as a part of the same program. While this may be true, there is no evidence that these organizations are exempt under sec. 501(c)(3). In fact, many of the brochures, all of which were provided by petitioner, include annotations to the effect that the organizations are not exempt under sec. 501(c)(3)↩.