T.C. Summary Opinion 2012-122

UNITED STATES TAX COURT

MICHAEL I. BROSS AND SHARON G. BROSS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11959-10S.                    Filed December 26, 2012.

Christian D. Posada, for petitioners.

Tracey B. Leibowitz, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463[1] of the Internal Revenue Code in effect when the

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the relevant period, and Rule references are to the Tax Court Rules of Practice and Procedure.

petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated February 22, 2010 (notice), respondent determined a $917 deficiency in petitioners' 2007 Federal income tax and imposed a section 6651(a)(1) addition to tax.[2] The issue for decision is whether petitioners realized and must recognize income as a result of the discharge of certain credit card debt.

## Background

Some of the facts have been stipulated and are so found. Michael I. Bross (petitioner), an attorney licensed to practice in Florida, and Sharon G. Bross, a licensed real estate agent in Florida, are, and were at all times relevant here, married to each other. They resided in Florida at the time the petition was filed.

Before the year in issue petitioners intended to take advantage of a deferred interest financing arrangement offered by a credit card company in connection with the purchase of furniture from a certain furniture store (financing arrangement). In effect, the financing arrangement allowed for no interest to accrue on certain furniture purchases financed through charges to a credit card

---

[2]Respondent now concedes the addition to tax.

issued to petitioner by a certain credit card company if the charges were completely paid by certain specified dates. If the charges were not completely paid by the specified dates, then interest would be charged to the credit card account in an amount computed from the date of purchase.

Petitioners misinterpreted the terms of the financing arrangement, and petitioner was charged interest that petitioners believed he did not owe. Petitioners unsuccessfully attempted to resolve the dispute with the credit card company over an extended period during which additional interest and late payment penalties added to the amount the credit card company claimed that petitioner owed. All of the interest and late payment penalties charged to the credit card account were consistent with the terms of the credit card agreement entered into between petitioner and the credit card company pursuant to the financing arrangement.

As it turned out, during 2007 petitioner reached an agreement with the credit card company. As part of that agreement and in return for a partial payment, the credit card company canceled the unpaid balance of the credit card account. In due course, the credit card company issued to petitioner a Form 1099-C, Cancellation of Debt, showing $3,214.28 as the amount of debt canceled.

Petitioners did not include the $3,214.28 in the income reported on their timely filed 2007 joint Federal income tax return. According to the notice, they should have.[3]

## Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.[4] Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

According to respondent, the discharged portion of the debt (including principal, interest, and related amounts) incurred through the financing arrangement resulted in income to petitioner.

In general, the term "income" as used in the Internal Revenue Code includes income from any source, including any accession to the taxpayer's wealth. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). A taxpayer who has incurred a debt all or a portion of which is later discharged or forgiven, generally has realized an accession to wealth. See United States v. Kirby Lumber Co., 284

---

[3]Other adjustments made in the notice are computational and need not be discussed.

[4]Petitioners do not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

U.S. 1, 3 (1931). Accordingly, when a taxpayer's obligation to repay a debt is settled for less than the amount of the face value of the debt, the taxpayer ordinarily realizes income from the discharge of indebtedness. Sec. 61(a)(12); see Warbus v. Commissioner, 110 T.C. 279, 284 (1998) (citing Vukasovich, Inc. v. Commissioner, 790 F.2d 1409, 1413-1414 (9th Cir. 1986), aff'g in part, rev'g in part T.C. Memo. 1984-611)). Discharge of indebtedness income results not only from the discharge of principal, but from the discharge of interest accrued on that principal as well. See Payne v. Commissioner, T.C. Memo. 2008-66, aff'd, 357 Fed. Appx. 734 (8th Cir. 2009); see also sec. 1.6050P-1(c), Income Tax Regs.

According to petitioners, petitioner did not realize discharge of indebtedness income upon the discharge of a portion of the debt owed to the credit card company because: (1) petitioner was not liable for the amount discharged, rather the discharge resulted from the settlement of a contested liability; (2) section 108(e)(5) allows the discharged portion of the debt to be treated not as income, but as an adjustment (reduction) to the purchase price (basis) of the furniture purchased through the financing arrangement; and (3) petitioner did not receive a Form 1099-C from the credit card company with respect to the discharged portion of the debt.

<u>Was There a Valid Dispute With Respect to the Discharged Debt</u>?

If the debt, or portion thereof, that is discharged arises from a "contested liability", then the amount discharged does not give rise to discharge of indebtedness income. Of course, the "contest", or dispute, with respect to the debt must be in good faith. <u>See</u> <u>Preslar v. Commissioner</u>, 167 F.3d 1323, 1327 (10th Cir. 1999) (citing <u>Zarin v. Commissioner</u>, 916 F.2d 110, 115 (3d Cir. 1990)), <u>rev'g</u> T.C. Memo. 1996-543; <u>see also</u> <u>Melvin v. Commissioner</u>, T.C. Memo. 2009-199 (citing, <u>e.g.</u>, <u>Rood v. Commissioner</u>, T.C. Memo. 1996-248, <u>aff'd without published opinion</u>, 122 F.3d 1078 (11th Cir. 1997)). According to petitioners, the discharged portion of the debt resulted from the settlement of a contested liability and no income was realized from the event. Respondent disagrees, and for the following reasons, so do we.

We begin by noting that petitioners' claim that the credit card company misrepresented the terms of the financing arrangement is not supported by the record. Petitioner agreed to the terms of the financing arrangement at the time of the furniture purchases. Furthermore, the terms of the financing arrangement were also included in the monthly credit card statements generated by the credit card company. At most, petitioners, although both highly educated professionals, misunderstood those terms.

As best we can determine from what has been submitted, the debt that was discharged consisted of interest and penalties on petitioner's credit card account. The interest and penalties ultimately discharged accrued in a manner consistent with the terms of the financing arrangement. Petitioners do not claim otherwise; instead, they complain that petitioner was not liable for the discharged interest and/or penalties because the credit card company did not respond to their many requests for a "pay off" amount with respect to the credit card account. We are unable to follow their reasoning in this regard. After all, the "pay off", or an amount close to it, with respect to petitioner's outstanding liability on the credit card account was shown on the many monthly credit card statements issued during the period of negotiations between petitioners and the credit card company that ultimately resulted in the settlement giving rise to the discharge of indebtedness income here under consideration.

Under the circumstances, petitioner's claim that he was not liable for the portion of the credit card debt ultimately discharged did not render that debt a "contested liability" within the meaning of the above-referenced authorities.

<u>Was the Discharged Debt a "Purchase-Money" Debt?</u>

Discharge of indebtedness does not always result in the realization of income. One exception to the general rule is found in section 108(e)(5). In a situation

involving a solvent debtor, that section allows the discharge of purchase-money indebtedness to be treated as a purchase price adjustment rather than discharge of indebtedness income. Petitioners' reliance on that section, however, is misplaced. Although nothing in the records suggests that petitioner was insolvent at the relevant time, it is clear that the debt discharged was not purchase-money indebtedness because it was not a debt between a seller and a purchaser, but rather a purchaser and the credit card company that financed the purchase. See sec. 108(e)(5)(A); cf. OKC Corp. & Subs. v. Commissioner, 82 T.C. 638 (1984).

What Is the Significance of the Form 1099-C?

According to petitioners, petitioner never received the Form 1099-C reflecting the discharge of the credit card debt. Whether he did is of no consequence here. Neither the failure to issue nor the failure to receive a Form 1099-C evidencing one form of income or another converts a taxable item, such as the discharge of indebtedness, into a nontaxable item. See Vaughn v. Commissioner, T.C. Memo. 1992-317, aff'd without published opinion, 15 F.3d 1095 (9th Cir. 1993).

Accordingly, the discharge of $3,214.28 of credit card debt during 2007 is includable in petitioners' income for that year.

To reflect the foregoing,

Decision will be entered for respondent with respect to the deficiency and for petitioners with respect to the addition to tax.